CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
JAN 11 2013
JULIA C. DUDLEY, CLERK
BY: DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| FLOYD W. BUTLER, JR., | ) | CASE NO. 5:12CV00022 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | By: B. Waugh Crigler |
| Defendant. | ) | U. S. Magistrate Judge |

This challenge to a final decision of the Commissioner which denied plaintiff's October 15, 2007 protectively-filed applications for disability insurance benefits and supplemental security income under the Social Security Act ("Act"), as amended, 42 U.S.C. §§ 416, 423, and 1381, et seq., is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions, and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand the case for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will RECOMMEND that an Order enter DENYING the Commissioner's motion for summary judgment, GRANTING, in part, and DENYING, in part, the plaintiff's motion for summary judgment, and REMANDING this case to the Commissioner for further proceedings.

In a decision dated February 25, 2011, an Administrative Law Judge ("Law Judge") found that plaintiff had not engaged in substantial gainful activity since November 23, 2006, his

alleged date of disability onset.[1] (R. 14.) The Law Judge determined plaintiff's obesity, diabetes, diabetic neuropathy, hypertension, residuals of rotator cuff tendonitis, asthma, and depression/chronic pain disorder were severe impairments but that plaintiff's carpal tunnel syndrome was not a severe impairment. (R. 15-16.) He also concluded that, through the date of the hearing, plaintiff did not suffer an impairment or combination of impairments which met or equaled a listed impairment. (R. 16.) Further, the Law Judge found that plaintiff possessed the residual functional capacity ("RFC") to perform the full range of sedentary work and less than the full range of light work.[2] (R. 17.)

The Law Judge relied on portions of the testimony of Tanya Hubacker, a vocational expert ("VE"), which was in response to questions premised on the Law Judge's RFC finding. (R. 19-20, 52-54.) Based on this testimony, the Law Judge determined that plaintiff was unable to perform his past relevant work as a dishwasher or fast food worker, but could perform other jobs existing in the national economy such as an office helper, counter clerk, order clerk, or final assembler. (R. 18-20, 54.) The Law Judge found plaintiff not disabled under the Act.

Plaintiff appealed the Law Judge's February 25, 2011 decision to the Appeals Council. (R. 1-11.) In its January 6, 2012 decision, the Appeals Council found no basis to review the Law

---

[1] Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). In order to qualify for a period of disability and disability insurance benefits, plaintiff must establish that he became disabled prior to the expiration of his insured status, which was June 30, 2011. *See* 20 C.F.R. § 404.131(a); (R. 14.) Supplemental security income is payable the month following the month in which the application was filed. 20 C.F.R. § 416.335.

[2] Sedentary work is defined in 20 C.F.R. § 404.1567(a) as involving lifting no more than 10 pounds at a time with occasional lifting or carrying of objects such as files or small tools. A job in this category involves sitting, though a certain amount of walking or standing is often necessary. Light work is defined in 20 C.F.R. § 404.1567(b) as involving lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. A job in this category requires a good deal of walking or standing, or when it involves sitting most of the time, some pushing and pulling of arm or leg controls.

2

Judge's decision. (R. 1-2.) The Appeals Council denied review and adopted the Law Judge's decision as the final decision of the Commissioner. *Id.* This action ensued and briefs were filed.

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and medical findings to determine the functional capacity of the claimant. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Shively v. Heckler*, 739 F.2d 987 (4th Cir. 1984). The regulations grant some latitude to the Commissioner in resolving conflicts or inconsistencies in the evidence, which the court is to review for clear error or lack of substantial evidentiary support. *Craig v. Chater*, 76 F.3d 585, 589-590 (4th Cir. 1996). In all, if the Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the court is to affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence is defined as evidence, "which reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than preponderance." *Id.* at 642.

Plaintiff asserts the following: 1) that the Law Judge failed to properly weigh the medical evidence; 2) he improperly assessed plaintiff's credibility; 3) he erred in not adequately considering plaintiff's obesity; and 4) that the finding that plaintiff was capable of sedentary or limited light work is not supported by substantial evidence. (Dkt. No. 10, at 10-18.)

Plaintiff's left shoulder was treated by Suzanne Stevens, M.D. throughout the relevant period. However, the record relating to the course of plaintiff's treatment is sparse due to the absence of nearly all of Dr. Steven's actual treatment records. On December 4, 2006, plaintiff underwent an ultrasound of his left shoulder for left shoulder tendinitis, which showed intact rotator cuff tendons with no full thickness tear identified. (R. 420.) Dr. Stevens also ordered an arthrogram to be performed on January 25, 2007. (R. 353.) This test had to be aborted after

3

gadolinium solution was injected into plaintiff's shoulder because plaintiff was too large to fit into the MR scanning device. (R. 353.) Dr. Stevens performed surgery on March 28, 2007 to treat plaintiff's chronic rotator cuff tendonitis and AC joint pain. (R. 365.) The surgery revealed no evidence of adhesive capsulitis or instability, and the rotator cuff was found to be strong without any evidence of fraying or tearing. (R. 365-366.) Dr. Stevens performed decompressive acromioplasty and resection of the distal clavicle. (R. 365.)

Between this surgery and July 2008, plaintiff returned repeatedly to Shenandoah Memorial Hospital's (SMH) emergency room complaining of pain in his left arm. (R. 380, 393, 398, 408, 414, 535.) X-rays of his left shoulder on both July 7, 2007 and November 28, 2007 were normal. (R. 395, 419.) The records from these visits show that plaintiff was undergoing rehabilitation on his shoulder (R. 378) and regularly was following up with Dr. Stevens. (R. 378, 386, 396.) However, none of Dr. Stevens' own treatment records from this time period were presented as evidence before the Law Judge. Thus, they are not in the record before this court.

Plaintiff also was seen by a consultative examiner, Richard Milligan, M.D., on March 3, 2009. Dr. Milligan noted that plaintiff had undergone left shoulder acromioplasty, and that he was "kind of getting spurring all from around the rotator cuff." (R. 594.) Dr. Milligan stated that plaintiff experienced limitation of motion of the left shoulder and opined plaintiff suffered "significant shoulder dysfunction." (R. 599.)

Plaintiff returned to SMH on June 14, 2009, complaining of left shoulder stiffness. Although an X-ray of his shoulder was negative for fracture or dislocation, plaintiff was unable to "maintain the shoulder in abduction when placed there passively." (R. 625, 630.) Plaintiff was instructed to use a sling and follow-up with Dr. Stevens. (R. 625.) On July 28, 2009, Dr. Stevens noted that plaintiff tolerated cervical range of motion without shoulder girdle pain, had no

4

atrophy in the shoulder, had no tenderness along the medial border of the scapula, had full elevation and abduction, no crepitance, and tolerated internal and external rotation. (R. 636.) However, plaintiff complained of mild pain with palm down abduction and the x-rays from SMH showed mild spurring. (R. 636.) Dr. Stevens treated plaintiff with a cortisone injection and diagnosed him with chronic intermittent left shoulder pain, planning to try conservative treatment measures first. (R. 636-637.)

On September 11, 2009, Dr. Stevens wrote a letter opining that plaintiff was disabled. Dr. Stevens noted that she had first treated the plaintiff on February 13, 2006. (R. 638.) Dr. Stevens also filled out a bilateral manual dexterity impairment questionnaire on December 9, 2009. (R. 686.) The questionnaire indicates that plaintiff experiences reduced grip strength and loss of sensation in both hands; suffers moderate limitations on grasping, turning, or twisting objects, using fingers and hands for fine manipulations, and using his left arm for reaching; is unable to push or pull; and that his symptomatology and pain would increase if he had to perform significant repetitive reaching, handling or fingering.[3] (R. 686, 690.)

Plaintiff also suffers from diabetic neuropathy, which worsened throughout the relevant period, and which causes difficulty in ambulating. In December 2006 and January 2007, plaintiff reported twitching, numbness, and tingling in his hands and legs during his regular diabetes follow-ups at the Shenandoah Free Clinic ("Free Clinic"). (R. 454-456.) On May 8, 2007, the Free Clinic stated plaintiff experienced pitting edema in his legs. (R. 448.) On October 23, 2007, plaintiff reported that his hands hurt and were swollen, and that he experienced problems with his legs while walking. (R. 445.) On November 27, 2007, the Free Clinic reported that plaintiff's pedal pulses were +2, and that protective sensation was absent in the plantar

---

[3] Dr. Stevens relies on an abnormal MRI of the left shoulder taken on February 16, 2007, which, like the balance of Dr. Stevens' treatment records, does not appear in the record. (R. 687.)

5

surface of both feet. (R. 444.) On January 8, 2008, the Free Clinic noted a diagnosis by Dr. Stevens that plaintiff suffered carpal tunnel syndrome for which he had been prescribed a brace. (R. 443.)

On January 26, 2008, plaintiff underwent a stress test for chest pain at SMH involving a modified Bruce protocol which was terminated after stage 1 "due to surpassing 85% of maximum heart rate and sustaining this level of exertion for time enough to allow for adequate Cardiolite redistribution."[4] (R. 497.) An examination revealed that plaintiff had trace edema in his feet and ankles. (R. 502.)

Plaintiff followed up on his diabetes throughout 2008 and 2009 at the Free Clinic. The reports from that period indicated that he had poor pedal pulses and an increasing lack of protective sensation in his lower extremities. (R. 542, 549, 550, 552, 671, 672, 674, 676, 679, 681.) On May 27, 2008, plaintiff reported a severe episode where he was unable to walk for twenty minutes. (R. 550.) On July 29, 2008, the Free Clinic noted that plaintiff had fallen earlier that month due to increased leg numbness. (R. 548.)

The March 19, 2009 records of SMH show that plaintiff required a cane to ambulate, though there is no record evidence relating to whether or when it first was prescribed. (R. 604.) Plaintiff underwent a State agency consultative examination on March 3, 2009 by Richard P. Milligan, M.D. (R. 593-599.) Dr. Milligan observed that "he obviously does not need it [the cane] for climbing steps but for walking he does okay."[5] (R. 593.) While the meaning of this is far from clear, it is the balance of Dr. Milligan's report that is important to a decision here.

---

[4] Stage 1 of a Modified Bruce Protocol involves walking on a treadmill for three minutes at a speed of 1.7mph on a 0% grade.

[5] The relevance of the word okay is not clear, but its presence is most likely due to the fact that the transcript was made from a voice recording.

6

While plaintiff's heel and toe gait was reported normal, Dr. Milligan observed that plaintiff's gait was abnormal bilaterally. (R. 596.) On neurological testing, plaintiff produced no ankle jerks, almost no knee jerks, there was no pin prick, light touch, or vibratory sensation in his lower extremities, with only mild loss of sensation in his hands especially out toward his fingertips. (R. 596.) A one flight step stress test produced elevated readings. (*Id.*)

Irrespective of this evidence, the Law Judge found that the plaintiff possessed the residual functional capacity (RFC) to perform the full range of sedentary work and less than the full range of light work. Light work requires "a good deal of walking or standing," 20 C.F.R. § 404.1567(b), and the Law Judge determined that plaintiff was capable of walking or standing for at least two hours out of an eight hour work day, based primarily on the State agency non-treating, non-examining assessment dated April 21, 2008 by R.S. Kadian, M.D. of plaintiff's residual functional capacity (R. 18, 511-518.) The Law Judge gave great weight to Dr. Kadian's RFC because "Dr. Kadian reviewed the evidence—including the treatment notes of Dr. Stevens—and concluded that the claimant can perform light work exertional work activities." (R. 18.) In truth, Dr. Kadian's review referenced record evidence from June 2006 through January 2008, which is less than all the evidence before the Law Judge, including Dr. Stevens' evidence of July 2009.

While the Commissioner normally is entitled to rely on the opinion of a non-treating, non-examining review physician, that reliance is misplaced when the underlying opinion fails to account for substantial evidence in the record. Here, Dr. Kadian's opinion was expressed before all the medical evidence relating to plaintiff's limitations was submitted into the record. That evidence included unrebutted reports of plaintiff's difficulty ambulating and objective neurological deficits in his extremities.

7

The Law Judge went on to misquote Dr. Milligan's report concerning plaintiff's use of a cane. In referring to Milligan's evidence, the Law Judge noted that "the examiner stated that it was obvious that he did not need [the cane] for regular walking." (R. 16.) Dr. Milligan reported only that plaintiff did not need his cane for climbing stairs, indicating that plaintiff did require it for walking. (R. 593.) The Law Judge further sought to support his determination of plaintiff's RFC by citing four pages of the entire medical record where he believed plaintiff was observed exhibiting a normal gait. (R. 16.) Only one of these referenced records, Exhibit 17F at 6, actually reports that plaintiff had a normal gait, and it is dated November 22, 2006, one day prior to his alleged disability onset. (R. 351.) The Law Judge's reference to Exhibit 18F at 6 is not in the record, if it existed at all,[6] and Exhibit 11F at 2 makes no mention whatsoever of plaintiff's gait. (R. 305.) On the other hand, Exhibit 41F very clearly reveals that plaintiff uses a cane for walking. (R. 600, 604.) This is consistent with Dr. Milligan's assessment, which stated that plaintiff had normal heel and toe gait, but that his gait was abnormal bilaterally. (R. 596.)

The Law Judge states that "on one occasion, [plaintiff] complained of lower extremity neuropathy, and it was noted that he did have increased neuropathy when *exercising*." (R. 18.) While the cited record states that plaintiff's blood sugar was low while exercising, it makes no connection between plaintiff's neuropathy and exercise. (R. 548.) Furthermore, almost all of plaintiff's records from the Free Clinic report that plaintiff complained of pain or swelling in his legs, frequently had low pedal pulses, and continually was experiencing decreasing protective sensation in his lower extremities. The Free Clinic's records are consistent with Dr. Milligan's examination, which showed plaintiff's neurological abnormalities on pin prick and light touch, the absence of vibratory sensation in his lower extremities, and mild loss of sensation in his hands as well. (R. 596.) Dr. Kadian appears to have had no access to any of these records before

---

[6] Exhibit 18F consists of only two pages and makes no reference to plaintiff's gait. (R. 352-353.)

8

making his determination, and, if he did, his assessment woefully fails to account for such. Therefore his assessment of plaintiff's residual functional capacity cannot substantially support the Law Judge's determination of plaintiff's RFC.

Finally, the Law Judge mischaracterizes the results of plaintiff's stress test. He observes that "[t]he doctor noted that he was able to run on the treadmill for a while, but had to stop, due to shortness of breath. No mention was made of having to stop the treadmill because of pain in the joints or extremities—it was due to shortness of breath." (R. 18.) This ignores the fact that the test was performed under a modified Bruce protocol, which would have required him to walk on a treadmill at a speed of 1.7 mph on a 0% grade for three minutes. (R. 497.) After only three minutes, plaintiff's heart rate had reached 85% of the maximum heart rate, and the test was terminated before he could go on to the next stage which would have required plaintiff to walk on a treadmill at a speed of 1.7 mph with a 5% grade for an additional three minutes. (R. 497.) These results are entirely inconsistent with the Law Judge's RFC finding. In fact, the extent to which plaintiff's ability to walk and stand actually is limited may be too severe to permit even sedentary work, which requires occasional standing and walking. 20 C.F.R. § 404.1567(a). Therefore, the Law Judge's RFC finding is not supported by substantial evidence.

Plaintiff also contends that the Law Judge failed to give appropriate weight to the treating physician's opinion regarding limitations in plaintiff's shoulder. Under 20 C.F.R. § 404.1527(c), the Law Judge must give the treating physician's medical opinions controlling weight based on the frequency, length, and nature of the treatment or explain what weight was accorded to the opinion, or he must provide a reasonable explanation for not doing so. Dr. Stevens, an orthopedist, treated plaintiff from February 2006 until at least December 2009, with a year and a half break which ended in July of 2009. Unfortunately, besides her September 11, 2009 letter

and her completed Impairment Questionnaire, only her notes from plaintiff's March 2007 acromioplasty and those from a July 28, 2009 follow-up appointment appear in the record. (R. 638-639, 686-691.) It is clear that Dr. Stevens' opinions are based upon a longitudinal view of plaintiff's treatment, irrespective of whether all her treatment notes appear in the record. She believed plaintiff was unable to do repetitive reaching, handling, fingering, or lifting and unable to perform any job requiring pushing or pulling, to which the Law Judge fails to give weight.

Dr. Stevens' findings regarding plaintiff's left arm difficulties are consistent with Dr. Milligan's finding that plaintiff experienced a diminished range of motion and strength in his left upper extremity. (R. 596.) Dr. Milligan also noted the lack of sensation in plaintiff's hands, especially toward his fingertips, and stated that plaintiff had "significant shoulder dysfunction and diabetic neuropathy." (R. 596, 599.) The Law Judge disregarded this evidence and, instead, relied on the State agency review opinion of Dr. Kadian, which the undersigned already has found lacking. In the end, the Law Judge simply dismissed the claimed limitations by stating that "even if the claimant were more restricted, the vocational expert noted sedentary jobs." (R. 18.) However, "most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions." Social Security Ruling ("SSR") 96-9p. While the VE did note sedentary jobs, the Law Judge's hypothetical did not include any restrictions on the plaintiff's bilateral manual dexterity, which SSR 96-9p states would have significantly eroded the available occupational base.[7] Because the State agency review evidence does not rise to the level of substantial evidence upon which the Law Judge could discredit Dr. Stevens' opinion, because there is a great deal of evidence from the records of the Free Clinic and SMH reflecting Dr. Stevens' treatment during the relevant period, and because the Law Judge otherwise failed to

---

[7] SSR 96-9p also states that the unskilled sedentary occupational base is significantly eroded where a claimant uses a medically required hand-held assistive device due to an impairment in both lower extremities.

10

properly explain the reasons for not according controlling weight to Dr. Stevens' opinions, his determination of plaintiff's RFC is not supported by substantial evidence.

For various reasons, plaintiff further asserts that the Law Judge failed to properly assess his credibility. Plaintiff did not appear, but was represented by counsel in a the rather brief hearing held on June 9, 2010, in Washington, D.C. [8] The court does not need to address this assertion because good cause has been shown on other grounds to remand the case for further proceedings. Should those further proceedings lead to a supplemental hearing, the Law Judge will be given an opportunity to reassess plaintiff's credibility under applicable standards.

Finally, plaintiff alleges that the Law Judge erred by not taking into account his obesity when determining his RFC. The Law Judge found that plaintiff's obesity was a severe impairment and considered it in determining his RFC. (R. 15-16.) Because the undersigned already has determined that the case should be remanded because the Law Judge's RFC finding is not supported by substantial evidence, plaintiff will have an opportunity to readdress the effects of his obesity.

For all these reasons, it is RECOMMENDED that an Order enter GRANTING, in part, and DENYING, in part the plaintiff's motion for summary judgment, DENYING the Commissioner's motion for summary judgment, and REMANDING the case to the Commissioner for further proceedings to reassess plaintiff's residual functional capacity and to address the balance of the questions in the sequential evaluation bases on that reassessment.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note objections, if any they may have, to this Report and Recommendation within

---

[8] The cover page of the hearing transcript states that it was held in Philadelphia, PA, but all other references in the record state that the hearing was held in Washington, D.C. (R. 48.)

11

fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(l)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to transmit a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: _____
U.S. Magistrate Judge

1-11-2013
Date